# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| JOSUE CEPEDA<br>260 Richardson Drive, Apt. E<br>Upper Sandusky, Ohio 43351, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| KASAI NORTH AMERICA, INC.<br>1225 Garrison Drive<br>Murfreesboro, Tennessee 37129, | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>KASAI NORTH AMERICA, INC.<br>1111 North Warpole Street<br>Upper Sandusky, Ohio 43351, | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| KASAI NORTH AMERICA, INC.<br>c/o C T Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, Ohio 43219, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Cepeda Cepeda, by and through undersigned counsel, as his Complaint against Defendant Kasai North America, Inc. ("Kasai"), states and avers the following:

## JURISDICTION & VENUE

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Cepeda is alleging Federal Law Claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e, the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.*, and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

2. All material events alleged in this Complaint occurred in Wyandot County, Ohio.

3. This Court has supplemental jurisdiction over Cepeda's state law claims pursuant to 28 U.S.C. § 1367 as Cepeda's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. Within 300 days of the conduct alleged below, Cepeda filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 470-2021-01191 against Kasai ("Cepeda EEOC Charge").

6. On May 16, 2022, Cepeda and undersigned counsel received a copy of the Notice of Right to Sue letter regarding the Charges of Discrimination brought by Cepeda against Kasai in the Cepeda EEOC Charge.[1]

7. Neither Cepeda nor his attorneys received a copy of the Notice of Right to Sue prior to May 16, 2022.[2]

8. Cepeda has filed this Complaint within 90 days of receiving the Notice of Right to Sue letter.

9. Cepeda has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

10. Within two years of the conduct alleged below, Cepeda filed charges of race and disability discrimination and retaliation related to the subject matter with the Ohio Civil Rights Commission ("OCRC") on June 3, 2022.

11. The OCRC has not yet issued a Charge Number or Notice of Right to Sue for these charges of discrimination.

---

[1] The Notice of Right to Sue is attached as Plaintiff's Exhibit A. *See* Affidavits of Gregory T. Shumaker and Josue Cepeda attached as Exhibits B and C respectively.
[2] *See* Exhibits B and C.

12. In accordance with R.C. § 4112.052(C)(2), the statute of limitations for filing claims under R.C. § 4112.01 *et seq.* was and is tolled during the period while Cepeda's OCRC charges remain pending.

13. Cepeda will seek leave to amend this Complaint to add claims for disability discrimination and retaliation upon receiving his Notice of Right to Sue from the OCRC.

## FACTS

14. Cepeda is a former employee of Kasai.

15. Kasai was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

16. At all times relevant herein, Cepeda was employed by Kasai for at least 12 months and had at least 1,250 hours of service with Kasai and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

17. Cepeda suffers from depression and anxiety.

18. Cepeda has a history of suffering from depression and anxiety.

19. Cepeda's depression and anxiety was so severe that it substantially affected his major life activities of working, spending time with friends and family, sleeping, and getting out of bed in the morning, amongst other activities.

20. As a result of his depression and anxiety, Cepeda was disabled.

21. As a result of his depression and anxiety, Kasai perceived Cepeda to be disabled.

22. In or around January 2019, Cepeda's symptoms grew significantly worse when his friend died.

23. In or around January 2019, Cepeda's supervisor Andrea (Last Name Unknown) and manager Jessica Stowers noticed Cepeda's symptoms were severely affecting his work and questioned him in a hostile manner about his mood.

24. Cepeda explained his depression and anxiety and told Andrea and Stowers that his friend had died.

25. Cepeda complained to Human Resources Manager Dean Shepherd about the incident.

26. Neither Shepherd nor Kasai took any action.

27. In or around October 2019, Cepeda took FMLA leave due to the birth of his daughter.

28. After Cepeda took leave, his treatment at Kasai changed for the worse.

29. Engineering Manager Josh Reidmaier began to treat Cepeda noticeably worse than he had treated him before.

30. Reidmaier started glaring at Cepeda and anyone who spoke to Cepeda at work, with no explanation.

31. In or around June 2020, Cepeda's depression and anxiety symptoms again began to grow worse, this time due to personal issues at home.

32. On or about June 15, 2020, Cepeda requested to leave work early because his depression and anxiety rendered him unable to continue working.

33. Cepeda had available paid time off.

34. Other Kasai employees were usually allowed to leave work early if they had available time off without question.

35. Cepeda's supervisor, John Kay, approved Cepeda's leave.

36. However, later that day, another supervisor, Matthew Higgins, called Cepeda and told him to come in the following morning for a meeting.

4

37. Instead of holding the scheduled meeting with Cepeda on June 16, 2020, Shepherd called Cepeda in the morning and informed him that Kasai was terminating his employment.

38. Shepherd was not involved in hiring Cepeda.

39. Suspiciously, Shepherd provided inconsistent explanations for the termination.

40. First, Shepherd said that the reason was that Cepeda had caused downtime on the production line when he left early the previous day.

41. Cepeda did not cause downtime on the production line when he left the previous day.

42. Then, Shepherd changed his explanation and said that Cepeda had "violated company policy," but did not specify what policy Cepeda had allegedly violated.

43. Cepeda had not violated any company policy.

44. Later, Shepherd alleged that the reason was because of Cepeda's performance.

45. Cepeda's had not received any previous warnings or write-ups related to his performance.

46. Shepherd's shifting explanations show that the reasons Kasai provided for Cepeda's termination were pretextual.

47. Cepeda is Hispanic and was raised in Puerto Rico.

48. As stated previously, it was common for employees to leave work early when they were not feeling well.

49. Caucasian, non-Hispanic employees, including Bridget Raymond, James Courset, and Gary Johnson, left work early within a week of the day Cepeda left early.

50. Kasai did not discipline Caucasian, non-Hispanic employees, including Raymond, Courset, and/or Johnson, for leaving work early.

51. On or about June 15, 2020, Cepeda requested to leave work early because he was not feeling well as a result of his depression and anxiety.

52. Kasai did not provide any FMLA paperwork for Cepeda to fill out for his leave.

53. The following day, Kasai terminated Cepeda's employment without warning.

54. Kasai terminated Cepeda in retaliation for Cepeda's use of FMLA leave and to interfere with Cepeda's ability to use further FMLA leave.

55. Kasai terminated Cepeda because he is Hispanic.

56. Kasai terminated Cepeda because he suffered from depression and anxiety.

57. Kasai has a progressive disciplinary policy ("Discipline Policy").

58. A verbal warning is the lowest level of discipline in the Discipline Policy.

59. Cepeda did not receive a verbal warning before the Termination.

60. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

61. Cepeda did not receive a written warning before the Termination.

62. A termination is the highest level of discipline in the Discipline Policy.

63. Kasai knowingly skipped progressive disciplinary steps in terminating Cepeda.

64. Kasai knowingly terminated Cepeda's employment.

65. Kasai knowingly took an adverse employment action against Cepeda.

66. Kasai knowingly took an adverse action against Cepeda.

67. Kasai intentionally skipped progressive disciplinary steps in terminating Cepeda.

68. Kasai intentionally terminated Cepeda's employment.

69. Kasai intentionally took an adverse employment action against Cepeda.

70. Kasai intentionally took an adverse action against Cepeda.

71. Kasai knew that skipping progressive disciplinary steps in terminating Cepeda would cause Cepeda harm, including economic harm.

72. Kasai knew that terminating Cepeda would cause Cepeda harm, including economic harm.

6

73. Kasai willfully skipped progressive disciplinary steps in terminating Cepeda.

74. Kasai willfully terminated Cepeda's employment.

75. Kasai willfully took an adverse employment action against Cepeda.

76. Kasai willfully took an adverse action against Cepeda.

77. Kasai has a policy against race and disability harassment ("Discrimination Policy").

78. Kasai's Discrimination Policy precludes retaliation against employees who complain about disability and/or race discrimination.

79. Alternatively, retaliation against employees who complain about disability and/or race discrimination is permitted by Kasai.

80. Kasai's Discrimination Policy precludes intimidation against employees who complain about disability and/or race discrimination.

81. Alternatively, intimidation against employees who complain about disability and/or race discrimination is permitted by Kasai.

82. Kasai's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

83. Kasai's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

84. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by Kasai.

85. Kasai's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

86. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by Kasai.

87. Cepeda's complaints of disability and race discrimination violate the Discrimination Policy.

88. Kasai has a policy to investigate reports of discrimination.

89. Kasai has a policy to investigate reports of violations of its Discrimination Policy.

90. An investigation should include interviewing the complainant.

91. An investigation should include interviewing the subject of the complaint.

92. An investigation should include interviewing the subject of the reported discrimination.

93. An investigation should include interviewing witnesses to the reported discrimination.

94. An investigation should include getting a written statement from the complainant.

95. An investigation should include getting a written statement from the subject of the complaint.

96. An investigation should include getting a written statement from the subject of the reported discrimination.

97. In response to Cepeda's report of disability and race discrimination, Kasai did not interview Cepeda.

98. In response to Cepeda's report of disability and race discrimination, Kasai did not interview Andrea.

99. In response to Cepeda's report of disability and race discrimination, Kasai did not interview Stowers.

100. In response to Cepeda's report of disability and race discrimination, Kasai did not interview witnesses.

101. In response to Cepeda's report of disability and race discrimination, Kasai did not get a written statement from Cepeda.

102. In response to Cepeda's report of disability and race discrimination, Kasai did not get a written statement from Andrea.

103. In response to Cepeda's report of disability and race discrimination, Kasai did not get a written statement from Stowers.

104. In response to Cepeda's report of disability and race discrimination, Kasai did not get a written statement from witnesses.

105. Kasai did not investigate Cepeda's report of disability and race discrimination.

106. As a direct and proximate result of Kasai's conduct, Cepeda suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

107. Cepeda restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Throughout his employment, Cepeda was fully competent to perform his essential job duties.

109. Kasai treated Cepeda differently than other similarly-situated employees based on his race.

110. Kasai violated Title VII by discriminating against Cepeda due to his race.

111. On or about June 16, 2020, Kasai terminated Cepeda without just cause.

112. At all times material herein, similarly-situated non-Hispanic employees were not terminated without just cause.

113. Kasai terminated Cepeda based on his race.

114. Kasai violated Title VII when they terminated Cepeda based on his race.

115. As a direct and proximate result of Kasai's conduct, Cepeda has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

116. Cepeda restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. Cepeda has a record of a disability.

9

118. Cepeda has a record of physical and/or mental impairment.

119. Kasai was aware of Cepeda's severe depression and anxiety.

120. Kasai was aware that Cepeda had requested off work as a result of his depression and anxiety.

121. Kasai was aware that Cepeda had undergone medical treatment for his depression and anxiety.

122. Kasai treated Cepeda differently than other similarly-situated employees based on his disabling conditions.

123. Kasai treated Cepeda differently than other similarly-situated employees based on his perceived disabling conditions.

124. On or about June 16, 2020, Kasai terminated Cepeda's employment without just cause.

125. Kasai terminated Cepeda's employment based on his disability.

126. Kasai terminated Cepeda's employment based on his perceived disability.

127. Kasai violated the ADA when it discharged Cepeda based on his disability.

128. Kasai violated the ADA when it discharged Cepeda based on his perceived disability.

129. Kasai violated the ADA by discriminating against Cepeda based on his disabling condition.

130. Kasai violated the ADA by discriminating against Cepeda based on his perceived disabling condition.

131. As a direct and proximate result of Kasai's conduct, Cepeda suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

132. Cepeda restates each and every prior paragraph of this complaint, as if it were fully restated herein.

133. As a result of Kasai's discriminatory conduct described above, Cepeda complained about the race discrimination he was experiencing.

134. Subsequent to Cepeda's reporting of race discrimination to HR, no investigations were made.

135. Subsequent to Cepeda's reporting of race discrimination to HR, Cepeda was terminated.

136. Kasai's actions were retaliatory in nature based on Cepeda's opposition to the unlawful discriminatory conduct.

137. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

138. As a direct and proximate result of Kasai's conduct, Cepeda suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV: RETALIATION IN VIOLATION OF THE ADA

139. Cepeda restates each and every prior paragraph of this complaint, as if it were fully restated herein.

140. As a result of Kasai's discriminatory conduct described above, Cepeda complained about the disability he was experiencing.

141. Subsequent to Cepeda's reporting of disability discrimination to HR, no investigations were made.

142. Subsequent to Cepeda's reporting of disability discrimination to HR, Cepeda was terminated.

143. Kasai's actions were retaliatory in nature based on Cepeda's opposition to the unlawful discriminatory conduct.

144. Pursuant to the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

145. As a direct and proximate result of Kasai's conduct, Cepeda suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

146. Cepeda restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

148. Kasai is a covered employer under FMLA.

149. During his employment, Cepeda qualified for FMLA leave.

150. During his employment, Cepeda attempted to request FMLA leave by asking Kasai if he could leave work early as a result of his severe depression and anxiety.

151. Kasai failed to properly advise Cepeda of his rights under the FMLA.

152. Kasai unlawfully interfered with Cepeda's exercise of his rights under the FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

153. Kasai's act of terminating Cepeda the day after he attempted to request FMLA leave violated and interfered with Cepeda's FMLA rights.

154. As a direct and proximate result of Kasai's conduct, Cepeda is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VI: RETALIATION IN VIOLATION OF FMLA

155. Cepeda restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. During his employment, Cepeda utilized FMLA leave.

157. After Cepeda utilized his qualified FMLA leave, Kasai retaliated against him.

158. Kasai retaliated against Cepeda by terminating his employment.

159. Kasai willfully retaliated against Cepeda in violation of 29 U.S.C. § 2615(a).

160. As a direct and proximate result of Kasai's wrongful conduct, Cepeda is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Cepeda respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Kasai to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Kasai to restore Cepeda to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Cepeda for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Cepeda claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
greg.shumaker@spitzlawfirm.com

*Attorneys for Plaintiff Josue Cepeda*

## JURY DEMAND

Plaintiff Cepeda demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)